UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EASSIE FURLOW,

       **Plaintiff,**

v.                                 **Case No:  2:12-cv-203-Ftm-DNF**

COMMISSIONER OF SOCIAL
SECURITY[1],

       **Defendant.**

---

## OPINION AND ORDER

This cause is before the Court on Plaintiff's Complaint (Doc. 1) filed on April 10, 2012. Plaintiff, Eassie Furlow seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Social Security Disability Insurance Benefits and Supplemental Security Income disability benefits.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g).

### I.  Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A.  Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit. FED. R. CIV. P. 25(d).  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

death or which has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. §§423(d)(2), 1382a(3); 20 C.F.R. §§404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5  (1987).

### B.  Procedural History

On March 23, 2009, Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income benefits asserting a disability onset date of August 14, 2008.  On June 1, 2009, the Commissioner denied the applications initially, and denied the application upon reconsideration on September 21, 2009.  A hearing was held before Administrative Law Judge Ronald S. Robins on March 29, 2011, and a supplemental hearing was held on July 5, 2011.  The ALJ issued an unfavorable decision on July 26, 2011. On February 12, 2012, the Appeals Council denied Plaintiff's request for review.  Plaintiff filed the instant action in federal court on April 10, 2012.

### C.  Summary of the ALJ's Decision

The ALJ found Plaintiff met the Social Security Act's insured status requirements through December 31, 2009.[2]  (Tr. p. 15).  At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 14, 2008. (Tr. p. 15). At step two, the ALJ found that the Plaintiff suffered from the severe impairments of "chronic cervical and lumbar pain, history of rotator cuff tear, hypertension controlled with

---

2  Plaintiff raises the last date insured as an issue in this case.  At the first hearing, the ALJ stated that Plaintiff's date last insured was March 31, 2012.  (Tr. p. 60).

medication, diabetes (recent onset 08/2008), chronic fibromyalgia, anxiety disorder NOS (20 CFR 404.1520(c) and 416.920(c)).ʺ (Tr. p. 15). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  (Tr. p. 17).   The ALJ found Plaintiff's mental impairments caused mild restrictions in activities of daily living, and moderate limitations in concentration, persistence or pace. (Tr. p. 17). The ALJ found no episodes of decompensation of an extended duration. (Tr. p. 17).   At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work except that Plaintiff can stand and walk for only three to four hours, in an eight hour day; can occasionally climb ladders and scaffolds; and has a marked limitation in understanding, remembering and carrying out complex instructions, and in making judgments in complex work related decisions. (Tr. p. 18).   At step five, the ALJ determined that Plaintiff was not disabled, but is unable to perform any past relevant work.  (Tr. p. 20).   The ALJ found that Plaintiff was a younger individual on the alleged onset date, had at least a high school education, can communicate in English, the transferability of job skill was not material, and that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as table worker (DOT #739.687-182, SVP 2, unskilled, sedentary exertional level) and nut sorter (DOT #521.687-086, SVP 2, sedentary exertional level).

### D.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales,* 402 U.S. 389, 390

(1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote,* 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.  Review of Facts and Conclusions of Law

### A.  Background Facts

Plaintiff was born on August 18, 1962, and was 48 years old on the date of the first hearing.  (Tr. p. 61, 150).  She has a high school education.  (Tr. p. 61). She lives with her two children, and her daughter was 14 years old on the date of the first hearing.  (Tr. p. 61-62).   She lives on the second floor of an apartment building, and she walks the stairs to reach her apartment.  (Tr. p. 62).  Plaintiff was injured on the job when a resident she was caring for hit her in the back.  (Tr. p. 73-74). Plaintiff complains of arthritis from her neck down and being in constant pain and discomfort.  (Tr. p. 62).  Plaintiff testified that it was hard for her to walk, to

sit, and to stand, and she has trouble sleeping.  (Tr. p. 62, 71).  At times, Plaintiff is unable to afford her medication so she may skip a dose.  (Tr. p. 64).  Plaintiff asserts that her diabetes is somewhat under control, and her high blood pressure is under control.  (Tr. p. 64-65).  Plaintiff testified she can go shopping with a cart or needs her cane to help her with walking, and standing in line for 15 or 20 minutes is uncomfortable.  (Tr. p. 65).  Plaintiff stated she could sit in a chair for an hour, but it was uncomfortable, and she could lift a gallon of milk but it would be hard. (Tr. p. 66).  Plaintiff testified that she has difficulty stooping, bending, squatting, kneeling, and balancing.  (Tr. p. 66).   Plaintiff is able to housework, but limits herself and is able to drive but is uncomfortable.  (Tr. p. 67).  Plaintiff is able to dress herself for the most part and bathe as well.  (Tr. p. 67).  Plaintiff considers herself depressed, and does have crying spells occasionally. (Tr. p. 68).  Plaintiff stated that she has memory and concentration problems.  (Tr. p. 68, 70). Plaintiff testified that it bothers her to write for long periods, and her arms and hands get numb and tingling.  (Tr. p. 69).  Plaintiff has a case manager to help her with remembering to calendar appointments.  (Tr. p. 70).  Plaintiff states that she is able to sit for 40 minutes and then must change positions.  (Tr. p. 71).  Plaintiff sees a psychiatrist once every two months.  (Tr. p. 72).

Plaintiff completed a Function Report – Adult on April 2, 2009. (Tr. p. 204).  Plaintiff indicated that she got her son ready for school because he is mentally disabled and handicapped with autism.  (Tr. p. 204).  Plaintiff bathes him, brushes his teeth, and gets him dressed.  (Tr. p. 204). She also gets her daughter up in the morning and does her hair.  (Tr. p. 204). She rests for approximately 2 hours, then she bathes, gets breakfast, and cleans the house as her body will allow.  (Tr. p. 205). Sometimes she is unable to clean because of her discomfort.  (Tr. p. 204). She has trouble standing, and sleeping.  (Tr. p. 105).  Plaintiff can dress herself, but cannot close a zipper that is on the back of an outfit.  (Tr. p. 205).  She prepares all of her own food, but it is

difficult to stir for a long period of time.  (Tr. p. 206).  She does the cleaning, laundry ironing, and washing dishes.  (Tr. p. 206).  She can drive a car, and shops for food, clothing, and personal needs.  (Tr. p. 207). She handles her own money.  (Tr. p. 207). She listens to music, reads and watches television.  (Tr. p. 208). She can lift things that are not heavy, a gallon of milk is heavy to her, and she is unable to stand for longer periods of time.  (Tr. p. 209). She can walk for 20 minutes, then rest and resume walking.  (Tr. p. 209). She has problems writing for long periods of time.  (Tr. p. 211).

Plaintiff completed a second Function Report – Adult on July 25, 2009.  (Tr. p. 239). Plaintiff repeats most of the information from the first Function Report- Adult.  Plaintiff repeated that she gets her son ready for school and that he needs total care, and helps her daughter with her hair.  (Tr. p. 238).  She cleans when she is able and rests when she is tired or feels pain and discomfort.  (Tr. p. 239).  She prepares meals for her family.  (Tr. p. 238). She lives on the second floor and it is hard for her to walk up the stairs.  (Tr. p. 238).  Plaintiff uses a cane when she goes out of the house.  (Tr. p. 239).

### B.  Vocational Expert

A Vocational Expert, Ruth Horvath testified at the second hearing before the ALJ on July 5, 2011).   Ms. Horvath testified that Plaintiff's past relevant work was as a human service worker, working as a home attendant which is DOT code 354.377-014, SVP: 3, semi-skilled, and medium work, however, she clarified the job duties with Plaintiff, and Ms. Horvath would classify the actual job done as unskilled work.  (Tr. p. 32).

The ALJ presented the following hypothetical to Ms. Horvath:

**ALJ:**  I have a 40, 48-year-old female, with a high school education and work history similar to Claimant with the following limitations.  Individual frequently lift 10 pounds, occasionally lift 20 pounds, stand and or walk about 6 hours in an 8 hour day, unlimited with regard to pushing and pulling of hand and foot

controls, so just stand and walk, stand and walk 6 to 8 hours, sit 6 to 8 hours. Individual can frequently climb ramps and stairs, balance, stoop, kneel, crouch, crawl, occasionally climb ladders, ropes, and scaffolds.  In addition, the individual has a marked limitation, marked being defined as serious limitation, substantial loss in the ability to effectively function in the areas of understanding, remembering, and carrying out complex instruction, ability to make judgments on complex work related decisions.  Such an individual be able to perform any of the past relevant work of the Claimant?

**VE:**   No, because it's reduced to light.

**ALJ**:   Unskilled work in the economy?

**VE**:   Yes, Your Honor.  She could work as a cleaner in housekeeping, which is DOT code 323.687-014, it's an SVPL 2, it is unskilled and light.  There are 237,173 in the nation, 18,097 in state, and 510 in the region.  She could work as a label marker, DOT code 920.587-014, it's an S – . . .

**VE:**   And that's a label marker.  It is SVP: 2, unskilled light.  And there are 26,595 in the nation, 716 in the state and there are 8 in the region.  And she could work as a cafeteria attendant, which is a busser.  And that's DOT code 311.677-010, it's an SVP:2, it is unskilled, light.  And there are 276,791 in the nation, 19,547 in the state. . . .

**ALJ:**   That's enough, thank you.  Next hypothetical, changing standing and walking to 3 to 4 hours in an 8 hour day, does it change your answer?

VE:  Yes, it would, Your Honor.

**ALJ:**  Still not past relevant work?

**VE:**  No past relevant work and no light work.

**ALJ:**  Could do any jobs you described previous, in the previous answer?

**VE:**  No, she could not.

**ALJ:**  Any jobs in the economy?

**VE:**  She would be reduced to sitting, I mean, she can only stand 3 or 4, but she can, no limit in sitting?

**ALJ:**  Six to eight.

**VE:**  Then she could work –

**ALJ:**  Could work an 8 hour day for purposes of the hypothetical.

**VE:**  Okay.  Then Claimant could work as a table worker, DOT code 739.687-182, SVP: 2, unskilled, sedentary.  And there are 25,233 in the nation, 1,660 in the state, and 52 in the region.  She could also work as a nut sorter, DOT code 521.687-086, it's an SVP:  2, it's sedentary.  There are 14,662 in the nation, 1,222, in the state, 0 in this region.

**ALJ**:  I don't need to hear anything, unless you have a job that, unless you have another job that doesn't have 0 in this region?

**VE:**  Oh, not at that simple level, no.

**ALJ:**  Thank you.  Next hypothetical, I'm going to change the sit, stand, walk situation to need for a sit stand option at the needs of the individual and not the needs of the employer, could change positions anywhere from 2 to 3 hours a day, I mean 2 to 3 hours, no that's wrong, let's say 2 to 3 times every 2 hours, thereabouts.

**VE:**  Uh-huh.

**ALJ:**  Pure sit stand option.

**VE:**  Uh-huh.  That would preclude –

**ALJ:**  Would that change your last answer?

**VE:**  Yes, it would, Your Honor.

**ALJ:**  And what would that be?

**VE:**  She would not be productive at work.

**ALJ:**  No work?

**VE:**  No work, yes.

The attorney asked the further hypothetical:

**ATTY:**  If you were to further assume that the individual had a marked difficulty in maintaining a schedule, would that affect your, any of the answer to any of the hypotheticals?

**VE:**   If she didn't show up to work –

**ATTY:**  Yeah.

**VE:**  -- then, yes, she would not be able to maintain her employment.

**ATTY:**  And would the use of a cane be, would that affect any of your answers?

**VE:**  You can do sedentary work and have a cane, so she could still do sedentary work, yeah.

**ALJ:**  So she wouldn't be able to do the light work?

**VE:**  No.

**ALJ:**  But she could do the sedentary?

**VE:**  She could do the sedentary, yes.

**ALJ:**  Okay.

**ATTY:**  But then the same restriction would apply as for as the marked difficulty in maintaining a schedule?

**VE:**  She still has to maintain a schedule –

**ATTY:**  Yeah, yeah.

**VE:**  -- and she'll work every day, yes.

(Tr. p. 33-37).

## C.  Summary of Medical Evidence

The Court reviewed the entire medical records submitted, some were years prior to the onset date.  A summary of the relevant medical evidence submitted in the record is as follows. On May 3, 2004, Plaintiff went to Lee Physician's Group for stress, and indicated in her medical history that she had rotator cuff surgery.  (Tr. p. 304). She was prescribed Lexipro.  (Tr. p. 305), but due to a reaction to it, on May 4, 2004, the doctor changed her medication to Xanax. (Tr. p. 303). On August 16, 2004, Plaintiff went to orthopedic Associates of SW Florida, PA for a consultative exam for a rotator cuff repair.  (Tr. p. 337-338).

On July 2, 2004, Plaintiff returned to Lee Physician's Group and had her medication changed to Zoloft for her depression.  (Tr. p. 296). On July 28, 2004, Plaintiff reported back pain from an injury at work.  (Tr. p. 294).  On November 1, 2004, Plaintiff reported pain all over and depression, and on March 3, 2005, Plaintiff complained of shoulder pain.  (Tr. p. 286-288).

On May 6, 2005, Plaintiff went to John Mehalik, M.D. for right shoulder pain. (Tr. p. 505).  Surgery was recommended to manipulate the shoulder under anesthesia and a possible arthroscopic revision.  (Tr. p. 507). On May 31, 2005, Plaintiff had an operation on her right shoulder to relieve her stiff right shoulder which was painful to move in any direction.  (Tr. p. 500-501).  On June 3, 2005, July 6, 2005, and August 17, 2005, Plaintiff went to Dr. Mehalik for right shoulder pain.  (Tr. p 492-499).  Dr. Mehalik's plan of treatment was to continue medication and recommended physical therapy.  (Tr. p. 494).  On September 28, 2005 and on December 2, 2005 Plaintiff returned for right shoulder pain.  (Tr. p. 485-87).  Dr. Mehalik's treatment plan was to continue medication and a home exercise program. (Tr. p. 487).

On June 1, 2006, and July 3, 2006, Plaintiff complained of chronic pain and stress due to shoulder injury.  (Tr. p. 271-274). On March 26, 2007, Plaintiff went to Lee Physician's Group for depression.  (Tr. p. 262).  Plaintiff was diagnosed with anxiety and depression and prescribed medication.  (Tr. p. 264).  On July 19, 2007, Plaintiff went to Shailaja Hegde, M.D. for joint pain beginning in wrist and radiating all over.  (Tr. p. 349).  Dr. Hegde recommended a rheumatoid work-up.  (Tr. p. 350). On July 30, 2008, Plaintiff saw Nancy Buthman, ARNP for back and neck pain, and spasms in hands, and tingling in hands and feet.  (Tr. p. 347).  Plaintiff claimed she could not stand without a cane.  (Tr. p. 347).  Ms. Buthman recommended a consultation with a nephrologist. (Tr. p. 348), and on December 17, 2008, Ms. Buthman recommended Plaintiff consult with a rheumatologist.  (Tr. p. 345-46).

On March 20, 2009, Plaintiff went to K. Ranjit Fernando, MD., a rheumatologist complaining of hurting all over.  (Tr. p. 339). Dr. Fernando's assessment was fibromyalgia. (Tr. p. 339).

On December 31, 2009, Plaintiff went to Family Health Centers of SW Florida, and Nancy Buthman, ARNP found Plaintiff's mood euthymic; and her appearance, affect, gait and stance normal.   (Tr. p. 432).  On February 10, 201, Plaintiff returned to Family Health Centers of SW Florida with complaints of right shoulder, head and lower back pain.  (Tr. p. 429). Plaintiff was prescribed Sertraline.  (Tr. p. 430).

On September 2, 2010, Plaintiff went to Lee Mental Health Center, Inc. stating that she felt miserable.  (Tr. p. 456).  She reported that she had a bike accident and had been in a lot of pain.  (Tr. p. 456).     Plaintiff stated that she had sleep problems, sadness and was crying a lot. (Tr. p. 456).  Plaintiff was found to be alert with logical thought processes, but with a depressed mood.  On September 16, 2010, Rosario C. Aliera, M.D. saw Plaintiff at Lee Mental Health, Inc. (Tr. p. 449-455).    Dr. Aliera found Plaintiff to be calm and cooperative, and to have fair judgment and fair insight.  (Tr. p. 451, 452).    Plaintiff's mood was depressed and constricted, but was oriented in all spheres.  (Tr. p. 452).   Plaintiff was prescribed medication.  (Tr. p. 453).

On October 20, 2010, Plaintiff went to Lee Mental Health Center, Inc. for a change of prescription.  (Tr. p. 480-481).   On November 19, 2010, Plaintiff returned and was diagnosed with major depressive disorder recurring.  (Tr. p. 474).   Plaintiff was having problems with concentration and memory.  (Tr. p. 476). On January 6, 2011, Plaintiff returned and was diagnosed with major depressive disorder recurring.  (Tr. p. 468, 474).   Plaintiff was told to continue her medication and case management.  (Tr. p. 469). The physician or ARNP found that Plaintiff's depression was lifting somewhat but there were times when she was down.  (Tr. p.

470). Plaintiff was found to have fair judgment and insight, but to be logical, and oriented in all spheres. (Tr. p. 472).

On May 20, 2011, Plaintiff went to Family Medical Centers of SW Florida stating that she was feeling fine, had no new symptoms, no headaches, and no sleep disturbances. (Tr. p. 604).

### D.  State Agency Evaluations

On April 22, 2009, Martha Puntey Ph.D. completed a Psychiatric Review Technique. (Tr. p. 366-379).   Dr. Putney determined Plaintiff had medical impairment(s) that were not severe, and had affective disorders. (Tr. p. 366). Dr. Putney found Plaintiff to have a medically determinable impairment of adjustment disorder with depression and anxiety.  (Tr. p. 369). Dr. Putney determined that Plaintiff had no functional limitations for restrictions of activities of daily living, mild difficulties in maintaining social functioning, no limitations in maintaining concentration, persistence, or pace and no episodes of decompensation of an extended duration. (Tr. p. 376). Dr. Putney found Plaintiff to be cooperative, and appropriate with a logical and coherent thought process. (Tr. p. 378).   Her depression and anxiety were reactive to her medical condition and did not exceed the level of an adjustment disorder.  (Tr. p. 378).  Dr. Putney determined that Plaintiff was able to work as her physical limitations permit. (Tr. p. 378).

On May 16, 2009, Plaintiff saw Stanley Rabinowitz, M.D. for a disability examination for Florida Department of Health.  (Tr. p. 380).  Plaintiff's complaints were hypertension, diabetes, arthritis and fibromyalgia. (Tr. p. 380). Dr. Rabinowitz found Plaintiff to have clear and understandable speech and communication. (Tr. p. 381). Plaintiff used a cane, but "needed no assistive device when ambulating distances up to 50 feet." (Tr. p. 381).  Dr.

Rabinowitz found Plaintiff's range of motion to be 30° for cervical spine, 35° for extension, 35/35° for lateral flexion, 45/45° for rotation, 65° for lumbar spine, 20° for extension, and 20/20° for lateral flexion. (Tr. p. 383). Dr. Rabinowitz also found knee flexion to be 115° out of 150°. Dr. Rabinowitz noted that there is crepitus evident in Plaintiff's knees, but no evidence of joint inflammation or deformity, (Tr. p. 382). Plaintiff's grip strength in both hands was normal and her dexterity was not impaired. (Tr. p. 382). Dr. Rabinowitz noted that Plaintiff had no difficulty getting on and off the examining table, and could squat a third of the way down with moderate difficulty. (Tr. p. 382). Dr. Rabinowitz found Plaintiff's memory to be intact. (Tr. p. 382). Dr. Rabinowitz's impression was that Plaintiff's hypertension was controlled, her diabetes mellitus was recently diagnosed and may be controlled on therapy, she has probably degenerative joint disease, and a history of chronic fibromyalgia without trigger point tenderness. (Tr. p. 382).

On May 29, 2009, Charles S. Allinder[3] completed a Physical Residual Functional Capacity Assessment. (Tr. p. 386-393). Mr. Allinder determined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, made no finding for the duration of stand/walk, could sit for 6 hours in an 8-hour workday, and was unlimited in the push and/or pull operation for hand and/or foot controls. (Tr. p. 387). Mr. Allinder noted that Plaintiff's injured rotator cuff, back & neck pain, arthritis, and fibromyalgia. (Tr. p. 387). Mr. Allinder found no postural limitations, manipulative limitations, visual limitations, communicative limitations, and environmental limitations. (Tr. p. 388-390). Mr. Allinder found that Plaintiff has no medically determinable impairments, however, her pain "can be considered only partially credible as they

---

3  Mr. Allinder's credentials were not provided.

are somewhat exaggerated in comparison with the objective data. She should be able to perform activities within the parameters of this RFC." (Tr. p. 391).

On August 31, 2009, Angeles Alvarez-Mullin, M.D. completed a Psychiatric Review Technique for Plaintiff. (Tr. p. 394-407). Dr. Alvarez-Mullin found Plaintiff to have medical impairment(s) that were not severe, co-existing non-mental impairment(s) that required a referral to another medical specialist, affective disorders and anxiety-related disorders. (Tr. p. 394). Dr. Alvarez-Mullin found that Plaintiff had a medically determinable impairment of major depressive disorder, recurrent "vs ADJ [adjustment] DIS [disorder] with mixed anxiety," and found Plaintiff's mood to be depressed. (Tr. p. 397). Dr. Alvarez-Mullin determined that anxiety was the predominant disturbance and that Plaintiff had a medically determinable impairment of adjustment disorder with mixed anxiety and depressed mood. (Tr. p. 399). Dr. Alvarez-Mullins determined that Plaintiff had mild functional limitations for restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild limitations in maintaining concentration, persistence, or pace and no episodes of decompensation of an extended duration. (Tr. p. 404). Dr. Alvarez-Mullins found no indication of a severe mental impairment. (Tr. p. 406).

On September 19, 2009, P.S. Krishnamurthy, M.D. completed a Physical Residual Functional Capacity Assessment. (Tr. p. 408-415). Dr. Krishnamurthy determined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and was unlimited in the push and/or pull operation for hand and/or foot controls. (Tr. p. 409). Dr. Krishnamurthy found Plaintiff to have the following occasional postural limitations of climbing a ladder, rope and scaffolds, and no other postural limitations. (Tr. p. 410). Dr. Krishnamurthy found no manipulative limitations,

visual limitations, communicative limitations, and environmental limitations.  (Tr. p. 388-390).
Dr. Krishnamurthy found Plaintiff's symptoms to be partially credible and attributable to a
medically determinable impairment, and modified the RFC accordingly.  (Tr. p. 413).

On May 2, 2011, Plaintiff was evaluated by Nancy Kelly, Psy.D.  for a consultative
evaluation. (Tr. p. 592-597).   Dr. Kelly determined that Plaintiff's dress was appropriate, her
speech fluent, her thought processes coherent, her attention and concentration intact, her memory
skills mildly impaired, her cognitive function below average, her insight fair, and her judgment
good.  (Tr. p. 593-94).  On May 3, 2011, Dr. Kelly completed a Medical Source statement of
ability to do Work-Related activities (Mental).  (Tr. p. 598-600).  Dr. Kelly found that Plaintiff
had no limitations in understanding and remembering simple instruction, carrying out simple
instructions, making judgments on simple work-related decisions, but had marked limitations in
understanding and remembering complex instructions, carrying out complex instruction, and in
her ability to make judgments on complex work-related decisions. (Tr. p. 598).   Dr. Kelly found
no limitations in Plaintiff's ability to interact with others.  (Tr. p. 599).

### E.   Specific Issues

Plaintiff raises four issues on appeal.  As stated by Plaintiff, they are: (1) Whether the
date last insured finding constituted harmless error; (2) Whether substantial evidence supports
the Commissioner's finding that Plaintiff's statements were not entirely credible; (3) Whether
substantial evidence supports the Commissioner's residual functional capacity finding; and (4)
whether substantial evidence supports the Commissioner's finding that Plaintiff was not disabled
because she could adjust to other work.

### 1.    Date Last Insured

The Plaintiff argues that the date last insured in the record for the Plaintiff is March 31, 2012, and the ALJ erred in his opinion by finding that her date last insured was December 31, 2009.  The ALJ did state the correct date of March 31, 2012 at the first hearing.  (See, Tr. p. 60). It is undisputed that the correct date last insured was March 31, 2012.  The Plaintiff has failed to show any harm caused by the ALJ citing the incorrect date in his decision. Even though this error occurred, there is no indication it was anything but harmless.   The ALJ considered medical evidence after December 31, 2009, without any indication that he was discounting it because it was after the date last insured.  A remand is not warranted when an ALJ commits harmless error. *Pichette v. Barnhart*, 185 Fed. App'x. 855, 856 (11th Cir. June 21, 2006)[4].  Therefore, the Court determines that including the wrong date last insured was harmless error, and not grounds for remand or reversal.

### 2.    Whether Substantial Evidence Supports the Commissioner's Finding of Lack of Credibility

The Plaintiff argues that that the ALJ erred in finding Plaintiff not credible concerning the intensity, persistence and limiting effects of her symptoms, and finding she was prone to exaggeration with regard to her symptoms.   The Commissioner asserts that the ALJ's decision was supported by substantial evidence.

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give

---

4 Eleventh Circuit unpublished opinions are not binding precedent but they may be cited as persuasive authority.  11th Cir. R. 36-2.

rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)).   After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence.   *Moreno v. Astrue*, 366 Fed. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. [citations omitted] Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson v. Barnhart*, 284 F.3d at 1225.   "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)).   The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are:   "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno v. Astrue*, 366 Fed. App'x. at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

The ALJ found that Plaintiff's physical impairments "are largely under control with medication and her other impairments are not as limiting as alleged." (Tr. p. 19).  The ALJ noted that Plaintiff has received intermittent treatment, and has not been hospitalized recently finding that the lack of hospitalization suggests that her condition is not as severe as alleged.  (Tr. p. 19). Further, the ALJ found that Plaintiff did not report consistent, significant symptoms in her follow-up visits to doctors.  (Tr. p. 19). The ALJ reviewed the consultative examination where the examiner noted a limited range of motion, but did not find any evidence of joint

inflammation, deformity, or muscle spasm.  (Tr. p. 19).  The ALJ found Plaintiff's grip strength and dexterity to be normal and Plaintiff showed no difficulty in getting on and off the examination tables and showed no motor or strength deficit. (Tr. p. 19).

The Court recognizes that Plaintiff was injured in 2004 and suffered back pain, and then had two surgeries on her shoulder.  Plaintiff did go to the doctor intermittently complaining of pain, however, the doctors have treated her with medication alone and there is no evidence that her condition has worsened over time.  Although there were reports that Plaintiff had an antalgic gait, difficulty squatting, and knee crepitus as cited by Plaintiff (See, Tr. p. 381, 382), the report on December 31, 2009 showed gait and stance to be normal.  (Tr. p. 348, 429, 432).   Dr. Rabinowitz evaluated Plaintiff on May 16, 2009, and felt there was no need for the use of a cane when walking up to 50 feet, and even through there was crepitus evident in her knees, there was no evidence of joint inflammation, instability or deformity.  (Tr. p. 382-383).  As the ALJ noted, Plaintiff had no difficulty getting on and off the examination table.  (Tr. p. 382).  Charles Allinder also completed a Physical Residual Functional Capacity Assessment finding Plaintiff to have no postural imitations, and considered her pain complaints to be only partially credible as they appeared to be somewhat exaggerated when viewing the objective data.  (Tr. p. 391).  In September 2009, Dr. Krishnamurthy also completed a Physical Residual Functional capacity assessment finding Plaintiff's symptoms to be partially credible and modifying the RFC to occasional climbing of ladders, ropes and scaffolds.  (Tr. p. 413).  On May 20, 2011, Plaintiff went to Family Medical Centers of SW Florida and reported that she was feeling fine, had no headaches, no sleep disturbances , and the nurse found Plaintiff to be in no acute distress.  (Tr. p. 604-605). There was no mention of any pain in this visit.

The ALJ considered the Plaintiff's activities of daily living and found them not to be consistent with the severity of her physical allegations. (Tr. p. 19).   The ALJ noted that Plaintiff was able to take care of her two special needs children, her own personal needs, and prepare meals for herself and family, shop, drive and clean as necessary.  (Tr. p. 19).  Plaintiff testified that she goes shopping, can lift a gallon of milk, does house work, irons and launders clothing, and is able to drive.   Plaintiff dresses herself, bathes without assistance, shops and prepares meals, and cleans her home at her schedule.  Plaintiff also is able to walk up stairs to her second floor apartments, and takes total care of her mentally disabled son, and cares for her daughter who also has a disability.  Although Plaintiff states that she rests after some of these activities, she is still able to complete these activities on a daily basis.

The ALJ reviewed Plaintiff's medical evidence carefully and supported his decision as to her credibility regarding her subjective complaint of pain with substantial evidence.  The ALJ relied on Plaintiff's medical records to determine that although her medically determinable impairments could reasonably be expected to cause her symptoms, her statements concerning the intensity, persistence and limiting effects of her symptoms were not credible.  The ALJ also reviewed Plaintiff's daily living activities carefully to reach his conclusion as to her credibility, and found her daily living activities to be inconsistent with Plaintiff's claim as to the severity of her symptoms.  There is substantial support in the record for the ALJ's determination that Plaintiff was not credible, and this Court will not disturb that finding upon review.

### 3.  Whether substantial evidence supports the Commissioner's residual functional capacity finding

Plaintiff argues that the ALJ erred in finding that Plaintiff was capable of frequently climbing ramps, stairs, balance, stoop, kneel, crouch, and crawl, and occasionally climbing

ladders and scaffold.   The Plaintiff asserts that these findings are inconsistent with Dr. Rabinowitz's report.  Plaintiff claims that Dr. Rabinowitz noted Plaintiff could only squat a third of the way down with moderate difficulty, noted crepitus in knees, and found right knee flexion diminished at 115 degrees.  (Tr. p. 382-384).  The Commissioner argues that substantial evidence support the ALJ's residual functional capacity finding, and based his opinion on the medical evidence in the record.

The RFC is the most a plaintiff is able to do despite her physical and mental limitations. 20 C.F.R. ¶404.1545(a)(1).    In determining whether Plaintiff can return to her past relevant work, the ALJ must determine the Plaintiff's RFC using all of the relevant medical and other evidence in the record.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004), 20 C.F.R. §404.1520(e).

Dr. Rabinowitz did note Plaintiff had limitations in her knees, however, he also noted that she had no difficulty getting on and off the examining table and could squat a third of the way down. The ALJ noted that the consultative examiner stated that while Plaintiff had a limited range of motion, there was no evidence of joint inflammation, deformity, or muscle spasm.  (Tr. p. 19). Dr. Krishnamurthy did find that Plaintiff had an occasional postural limitation of climbing a ladder, rope and scaffold. The ALJ incorporated Dr. Krishnamurthy's findings in his RFC by stating that Plaintiff can occasionally climb ladders and scaffold. The ALJ is permitted to rely on Dr. Krishnamurthy's opinion in determining the Plaintiff's RFC as well as considering all of the medical evidence and other evidence in the record including Plaintiff's testimony and statements as to her activities of daily living.  The Court determines that the ALJ did not err in finding that Plaintiff's only postural limitations in being able to perform light work are occasionally climbing ladders and scaffolds.

**4.  Whether substantial evidence supports the Commissioner's finding that Plaintiff was not disabled because she could adjust to other work**

Plaintiff asserts that the ALJ found Plaintiff incapable of performing a full range of light work which precluded her past relevant work.  The ALJ found Plaintiff could perform occupations of table worker or a nut sorter.  Plaintiff claims that the ALJ asked the vocational expert whether a need to change positions anywhere from 2 to 3 times every 2 hours would preclude other work, and the vocational expert determined there would be no work available. Plaintiff argues that she testified she can sit for only a half an hour and then it is uncomfortable but if she had no choice, she could sit for an hour.  Plaintiff argues that she would have to change positions every hour or 2 times every two hours, and therefore there are no jobs available that she could perform.  The Commissioner responds that the ALJ posed a hypothetical based upon Plaintiff's limitations from the RFC.  When the hypothetical included all of the limitations the ALJ found in the RFC, the vocational expert found there were other jobs in the national economy that Plaintiff was able to perform.

"At step five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform.  *Winchell v. Comm'r of Social Security*, 631 F.3d 1176, 1180 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232,1239 (11th Cir. 2004); 20 C.F.R. §§404.1520(a)(4)(v), 416.920(a)(4)(v)).   An ALJ may use the Medical Vocation Guidelines or may obtain the testimony of a vocational expert to determine whether there a jobs that exist in the national economy that a claimant can perform.  *Id*.  If the ALJ decides to use a vocational expert, for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id*. (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

In the instant case, the ALJ determined that Plaintiff could perform light work, except that she can stand and walk for only three to four hours in an eight hour day; and can occasionally climb ladders and scaffolds; and has a marked limitation in understanding, remembering and carrying out complex instructions and in making judgments in complex work related decisions. (Tr. p.18).   In his hypothetical to the vocational expert, the ALJ did indicate that Plaintiff was limited to occasionally climbing ladders, ropes and scaffolds, and her marked limitations regarding complex instructions and judgment.  (Tr. p. 34). Later, the ALJ added to the hypothetical that Plaintiff could stand and walk only 3 to 4 hours in an 8 hour day.  (Tr. p. 35). The vocational expert determined that there were jobs in the national economy such as table worker and nut sorter[5] that Plaintiff was able to perform.   Dr. Krishnamurthy did determine that Plaintiff could stand/and or walk for 6 hours in an 8-hour workday which supports the ALJ's determination that Plaintiff could stand and walk only 3 to 4 hours in an 8 hour day.  The ALJ did not find Plaintiff to be totally credible in her testimony as to her abilities, and the ALJ relied on the medical record when determining the appropriate RFC.  Therefore, the Court determines that the ALJ did include all of Plaintiff's limitations in his hypothetical to the vocational expert, the vocational expert's testimony constitutes substantial evidence, and the ALJ did not err in determining there are other jobs in the national economy that exist that Plaintiff can perform.

_____

5 The Court notes that the vocational expert testified that with the added restriction of standing and walking to 3 to 4 hours in an 8-hour day, the Plaintiff was not able to return to past relevant work and could not perform light work, but was able to perform jobs at the sedentary level including table worker and nut sorter.  Plaintiff did not raise an issue as to this finding.  The RFC articulated by the ALJ is for less than the full range of light work, but it is also clear that it exceeds the RFC for sedentary work.  "Where a claimant's RFC is between two exertional levels, . . . the grid guidelines, which reflect only common-and not all- patterns of vocational factors are not binding and are instead used only as an analytical framework.  In such a situation, a VE is brought in to testify as to whether a significant number of jobs exist in the national economy that a hypothetical individual with the claimant's limitations can perform."  *Smith v.* Astrue, 2011 WL 2650588 (M.D. Ala. July 6, 2011) (citing, Anderson *v. Commissioner of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) and *Watson v. Astrue*, 376 F. App's 953, 956-67 (11th Cir. 2010)).  In the instant case, the ALJ determined that Plaintiff was unable to perform a full range of light work and engaged a vocational expert to determine if there are jobs in significant numbers in the national economy which Plaintiff could perform.  Therefore, the determination by the vocational expert that with Plaintiff's limitations, sedentary work was more appropriate is unavailing.

**III. Conclusion**

For the reasons states above, it is hereby **ORDERED:**

1.   The final decision of the Commissioner is **AFFIRMED**.

2.   The Clerk is directed to enter judgment for the Commissioner and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on August 19, 2013.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties